1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUSSEIN ALI,<br><br>        Plaintiff,<br><br>    v.<br><br>AMERICAN AIRLINES, INC.,<br><br>        Defendant. | Case No. 1:23-cv-00850-ADA-EPG<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT'S MOTION TO DISMISS BE GRANTED<br><br>(ECF No. 5)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS<br><br>ORDER DIRECTING CLERK TO CHANGE PLAINTIFF'S NAME TO "HUSSEIN ALI" ON THE DOCKET |

On June 2, 2023, Defendant American Airlines, Inc., removed a lawsuit from the Fresno County Superior Court, in which Plaintiff Hussein Ali, proceeding *pro se*, alleges Federal civil rights and state law violations arising from difficulties he encountered while attempting to fly from Fresno, California to Orlando, Florida. (ECF No. 1).

Defendant moves to dismiss this case with prejudice for failure to state a claim, noting that this lawsuit is nearly identical to an earlier case before this Court—*Ali v. American Airlines Group, Inc.*, 1:22-cv-1125-ADA-EPG (*Ali I*)—that was dismissed on June 8, 2023. (ECF No. 5). After this case and *Ali I* were deemed related under Local Rule 123(a), the presiding District Judge referred this matter to the undersigned. (ECF Nos. 12, 15).

1

1    Upon review of the parties' briefs, the Court will recommend that Defendant's motion
2  to dismiss (ECF No. 5) be granted. The parties have twenty-one days to file any objections to
3  these findings and recommendations.

4      **I.      PLAINTIFF'S PRIOR CASE**

5      Before addressing the allegations in this case, the Court briefly addresses *Ali I*.
6  Defendants likewise removed that case from state court, in which Plaintiff alleged civil rights
7  and state law violations after he was asked to leave a plane and later denied the opportunity to
8  fly the next day despite paying for airfare. (ECF No. 4).[1]  Defendant filed a motion to dismiss
9  for failure to state a claim, which was referred to the undersigned. (ECF Nos. 8, 14). This Court
10 issued findings and recommendations to grant the motion, except that it concluded that Plaintiff
11 should be granted leave to amend. (ECF No. 17). In the findings and recommendations, the
12 Court provided relevant legal standards and instruction that might be useful if Plaintiff decided
13 to file an amended complaint.

14     Neither party objected to the findings and recommendations, and the District Judge
15 adopted them, giving Plaintiff thirty days to file an amended complaint. (ECF No. 18). After
16 Plaintiff failed to file an amended complaint, the District Judge dismissed the case on June 8,
17 2023. (ECF No. 19).

18     **II.     SUMMARY OF THE CURRENT ALLEGATIONS**

19     Rather than file an amended complaint, Plaintiff filed a complaint nearly identical[2] to
20 his complaint from *Ali I* in the Fresno County Superior Court on April 17, 2023. (ECF No. 1-1,
21 p. 2).[3]

22     The instant complaint, which has been removed, states that, on July 13, 2022, Plaintiff
23 began a trip from Fresno to Orlando to spend a week with his family. This trip required him to
24 change planes in Phoenix, Arizona.

25

26 [1] All citations within this section are to *Ali I*.
   [2] The most material differences between the two complaints are (1) Plaintiff's addition of a cause of
27 action for "pain and suffering" and (2) the addition of factual allegations regarding his attempts to
   retrieve his bag.
28 [3] Minor alterations, such as changing capitalization, have been made to some of Plaintiff's quotations
   without indicating each change.

1    When he arrived in Phoenix, he was the last passenger to board and discovered a fellow

2  passenger in his seat. Accordingly, he looked for the first empty seat and sat in it. A few

3  minutes later, an agent told him that he was sitting in the wrong seat. Plaintiff explained that he

4  wanted to sit in his assigned seat and showed the agent his boarding pass. The agent took him

5  to his assigned seat where he sat.

6    However, a few minutes later, a second agent approached Plaintiff and told him to

7  follow him. The second agent told Plaintiff that he would not be flying that day and would be

8  booked on the next flight. Plaintiff did not object and waited for the next flight, which was

9  scheduled for the following day.

10    On the morning of the next flight, Plaintiff attempted to check in with an agent, but

11  learned that his ticket had been canceled. Plaintiff asked to speak with a manager, who told him

12  that his ticket had been canceled and that he would have to buy a new ticket. Plaintiff did not

13  have the funds available and had to sell stocks to buy a ticket.

14    After paying for a ticket, the manager started to check him in but could not do so

15  because the airline blocked him and refused to permit him to travel. Plaintiff was now out

16  $1500.00 and did not have the means to buy a new ticket with another airline. The agent from

17  the day before did not mention that there would be a problem. Had he done so, Plaintiff would

18  have attempted to buy a ticket with a different airline.

19    Plaintiff's bag, which had his medication and keys to his house and car (which was

20  parked at the Fresno airport) went to Orlando. Being without his medication or keys, Plaintiff

21  had no other choice but to head back to Fresno. Plaintiff had enough funds to buy a ticket back

22  to Fresno. He attempted to file a missing claim for his bag but was told that he could only do so

23  at his final destination in Orlando. Plaintiff tried to retrieve his bag unsuccessfully, causing him

24  to give up on it.

25    Citing the Civil Rights Act of 1964, Plaintiff states that two different managers from

26  two different facilities with the same training violated his rights, complaining about his removal

27  from the flight and inability to fly the next day, and indicating that he was discriminated on the

28  basis of his "race, color, religion or national origin." He also alleges a claim for "pain and

1   suffering" for spending the night in the Phoenix Airport without his medication and funds, for

2   the second agent refusing to check him in after he bought a second ticket, and for not getting

3   his bag that contained his medication. Additionally, he alleges violations of § 17200 (unfair

4   competition) and § 17500 (false and misleading statements) of California's Business and

5   Professions Code because Defendant failed to explain why it denied him travel; its conduct was

6   immoral, unethical, oppression, unscrupulous, unlawful, fraudulent, or unfair; and it made a

7   false statement that it does not discriminate. Lastly, Plaintiff alleges that Defendant was

8   unjustly enriched by refusing to provide travel after he paid "the cost of two tickets."

9          As for relief, Plaintiff seeks a refund "of all double billings and overcharges," punitive

10   damages, attorney fees, and statutory penalties. He also asks that Defendant be enjoined from

11   implementing its no-refund policy, from making false and misleading statements, and from

12   engaging in unfair competition.

13          **III.      MOTION TO DISMISS**

14                  **A.      Summary of the Parties' Arguments**

15          The parties briefing in this case is materially similar to *Ali I*.

16          Defendant's motion to dismiss argues that Plaintiff has not offered sufficient factual

17   allegations to "decipher what is being alleged against it, what statutes were allegedly violated,

18   or how any such statute is remotely applicable to the vague facts." (ECF No. 5, p. 13).

19   Additionally, it argues that Plaintiff fails to sufficiently plead the elements for any claim, that

20   California's Business and Profession Code cannot apply to the alleged conduct occurring in

21   Phoenix, and that there is no cause of action for pain and suffering or a freestanding cause of

22   action for unjust enrichment.[4]

23          Plaintiff filed an opposition to the motion to dismiss, citing standards governing

24   dismissal and arguing that his complaint is sufficient. (ECF No. 11). Plaintiff requests that, if

25   the Court grants the motion to dismiss, he be given leave to file an amended complaint. (*Id.* at

26

27   [4] Defendant also argues that, "in the event the [c]omplaint is not dismissed in its entirety, the improper
and unwarranted remedies [in the complaint] should still be dismissed." (ECF No. 5, p. 21). Because the
28   Court is recommending that all claims be dismissed, it need not address any of Plaintiff's requests for
relief.

1    3).

2         Defendant filed a reply, arguing that Plaintiff failed to respond to the substance of the

3    motion to dismiss and leave to amend would be futile because he filed a nearly identical

4    complaint to the one in *Ali I* despite this Court identifying the deficiencies in that complaint and

5    providing legal standards and instruction for any amended complaint. (ECF No. 14).

6             **B.**     **Standards**

7         In considering a motion to dismiss, the Court must accept all allegations of material fact

8    in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). "[T]he court must

9    construe the complaint in the light most favorable to the plaintiff, taking all [of the plaintiff's]

10   allegations as true and drawing all reasonable inferences from the complaint in [the plaintiff's]

11   favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). In addition, *pro se* pleadings

12   "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v.*

13   *Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

14        Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader

15   is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the

16   grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

17   (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A motion to dismiss pursuant to Rule

18   12(b)(6) operates to test the sufficiency of the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662,

19   679 (2009). The first step in testing the sufficiency of the complaint is to identify any

20   conclusory allegations. *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause

21   of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*,

22   550 U.S. at 555). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief

23   requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

24   of action will not do." *Twombly*, 550 U.S. at 555 (citations and quotation marks omitted).

25        After assuming the veracity of all well-pleaded factual allegations, the second step is to

26   determine whether the complaint pleads "a claim to relief that is plausible on its face." *Iqbal*,

27   556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556) (rejecting the traditional 12(b)(6) standard

28   set forth in *Conley*, 355 U.S. at 45-46). A claim is facially plausible when the plaintiff "pleads

1    factual content that allows the court to draw the reasonable inference that the defendant is liable

2    for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The

3    standard for plausibility is not akin to a "probability requirement," but it requires "more than a

4    sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

5              **C.      Analysis**

6                      **1.      Civil Rights Act of 1964**

7         Plaintiff's first claim is brought under the Civil Rights Act of 1964 and alleges

8    discrimination based off his interaction with "two different [m]anagers who received the same

9    training . . . from the same source," his removal from the flight, and his inability to fly the next

10   day despite buying a ticket. (ECF No. 1-1, pp. 4-5). Defendant moves to dismiss this claim

11   because (1) Plaintiff has failed to identify which Title of the Act Defendant allegedly violated

12   (2) even construing this as a claim under Title VI, Plaintiff has failed to state a claim under the

13   standards the Court previously provided. (ECF No. 5, p. 16).

14        As in *Ali I*, the Court declines to recommend dismissal of this claim because Plaintiff

15   has failed to identify the Title of the Act that would apply, as the Court has the obligation to

16   construe his complaint as alleging a cause of action that is reasonably clear from the face of the

17   complaint even if Plaintiff does not identify the specific Title of the Act. *See Bretz v. Kelman*,

18   773 F.2d 1026, 1027 (9th Cir. 1985) (construing pleadings as raising causes of action under 42

19   U.S.C. § 1983 and § 1985, although the "appeal was drafted in terms of § 1983 only," because

20   a court has "an obligation where the petitioner is *pro se*, particularly in civil rights cases, to

21   construe the pleadings liberally and to afford the petitioner the benefit of any doubt").

22        However, Defendant correctly notes that this Court previously construed this claim as

23   reasonably implicating Title VI, which provides in relevant part as follows: "No person in the

24   United States shall, on the ground of race, color, or national origin, be excluded from

25   participation in, be denied the benefits of, or be subjected to discrimination . . . ." 42 U.S.C. §

26   2000d.[5] This statute "prohibits only intentional discrimination." *Alexander v. Sandoval*, 532

27

28   _____

     [5] Under 42 U.S.C. § 2000d, the alleged discrimination must have occurred "under any program or
     activity receiving Federal financial assistance." "Airlines receiving subsidies are required to comply

                                                        6

1   U.S. 275, 280 (2001). Further, "Title VI . . . proscribe[s] only those racial classifications that

2   would violate the Equal Protection Clause or the Fifth Amendment." *Regents of Univ. of*

3   *California v. Bakke*, 438 U.S. 265, 287 (1978); *see Aguirre v. San Leandro Police Dep't*, No.

4   10-04364 CW, 2011 WL 738292, at *3 (N.D. Cal. Feb. 22, 2011) ("Title VI and the Equal

5   Protection Clause of the Fourteenth Amendment are coextensive in their protection of

6   individual liberties."). Discrimination occurs where the defendant "selected or reaffirmed a

7   particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse

8   effects upon an identifiable group." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279

9   (1979); *see Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994), *as amended* (Nov.

10  22, 1994) ("Intentional discrimination means that a defendant acted at least in part *because of* a

11  plaintiff's protected status.").

12          However, despite providing these standards to Plaintiff in *Ali I*, Plaintiff has not

13  adequately pled facts showing that Defendant discriminated against him on a protected basis. In

14  pleading a Title VI claim, a plaintiff must identify the protected basis on which he was

15  discriminated (*e.g.*, national origin) and provide sufficient facts indicating that Plaintiff was

16  discriminated on that basis. *See King v. Bd. of Trustees of California State Univ.*, No. C 14-

17  5020 LB, 2015 WL 1519268, at *3 (N.D. Cal. Apr. 2, 2015) ("Plaintiff's statement that he

18  'identifies as Negro or African American and believes the impact was discriminatory along the

19  line of race, color, or national origin' (FAC, ECF No. 7 at 9) is conclusory and insufficient to

20  meet the *Iqbal-Twombly* pleading standard" for purposes of stating a Title VI claim.).

21  Examples of conduct that can support claims of discrimination include the use of racially

22  derogatory remarks, *Jones v. Pruette*, No. ED CV 14-0936- JLS (PLA), 2017 WL 8944062, at

23  *8 (C.D. Cal. July 11, 2017), differential treatment of similarly situated members of other

24  protected classes, *United States v. Armstrong*, 517 U.S. 456, 470, (1996), or the existence of

25  policies enacted for a discriminatory purpose, *Valeria v. Davis*, 307 F.3d 1036, 1042 (9th Cir.

26

27

28  with Title VI." *Keum v. Virgin Am. Inc.*, 781 F. Supp. 2d 944, 954 (N.D. Cal. 2011) (citing 14 C.F.R.
§ 271.9, which states as follows at § 271.9(a)(2): "All air carriers receiving subsidy under this part shall
comply with the following: The Civil Rights Act of 1964 and 49 CFR part 21.").

1    2002).

2         Here, while Plaintiff generally indicates that he was discriminated against, he does not

3    identify his protected class (*e.g.*, his national origin) nor does he explain how Defendant

4    discriminated against him such basis (*e.g.*, the managers banned him from flying because of his

5    national origin). Accordingly, he fails to meet this element of a Title VI claim.

6                    **2.        Pain and suffering**

7         Defendant argues that Plaintiff's claim for "pain and suffering" is not a cause of action.

8    (ECF No. 5, pp. 20-21). The Court agrees. "'Pain and suffering' is not a cause of action, but a

9    category of damages." *Johnson v. United States*, No. C-13-2405 EMC, 2013 WL 6502818, at

10   *7 (N.D. Cal. Dec. 11, 2013), *aff'd*, 734 F. App'x 436 (9th Cir. 2018). Accordingly, Plaintiff

11   cannot state a cognizable claim for pain and suffering.

12                   **3.        Section 17200 and 17500 claims**

13        Plaintiff alleges violations of § 17200 (unfair competition) and § 17500 (false and

14   misleading statements) of California's Business and Professions Code because Defendant failed

15   to explain why it denied him travel; its conduct was immoral, unethical, oppression,

16   unscrupulous, unlawful, fraudulent, or unfair; and it made a false advertisement that it does not

17   discriminate. (ECF No. 1-1, pp. 5-8). Defendant argues that none of these allegations suffice to

18   state a claim under these statutes. (ECF No. 5, pp. 18-20).

19        To bring a claim for a violation of Section 17200 of California's Unfair
          Competition Law ("UCL"), "a plaintiff must show either an (1) 'unlawful,
20        unfair, or fraudulent business act or practice,' or (2) 'unfair, deceptive, untrue or
          misleading advertising.'" *Lippitt v. Raymond James Fin. Servs.*, 340 F.3d 1033,
21        1043 (9th Cir.2003) (quoting Cal. Bus. & Prof. Code § 17200). Thus, to state a
          claim under Section 17200, a plaintiff must establish that the practice is (1)
22        unlawful (i.e., is forbidden by law), (2) unfair (i.e., harm to victim outweighs
          any benefit) or (3) fraudulent (i.e., is likely to deceive members of the public). A
23        plaintiff only needs to establish a violation of the UCL under one of these three
          prongs, as each operates independently from the others. *See State Farm Fire &*
24        *Cas. Co. v. Super. Ct.*, 45 Cal.App.4th 1093, 1102, 53 Cal.Rptr.2d 229 (1996).

25

26   *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1198 (N.D. Cal. 2016). "Allegations of

27   fraudulent conduct under Section 17200 must satisfy the heightened pleading requirements of

28   Rule 9(b)."*Lopez v. Wachovia Mortg.*, No. C 10-01645 WHA, 2010 WL 2836823, at *7 (N.D.

1 | Cal. July 19, 2010).

> California's False Advertising Law (FAL) prohibits the dissemination in any
> advertising media of any "statement" concerning real or personal property
> offered for sale [or to perform services], "which is untrue or misleading, and
> which is known, or which by the exercise of reasonable care should be known,
> to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

> "[T]o state a claim under either the UCL or the false advertising law, based on
> false advertising or promotional practices, it is necessary only to show that
> members of the public are likely to be deceived." *In re Tobacco II Cases*, 46
> Cal.4th 298, 312, 93 Cal.Rptr.3d 559, 207 P.3d 20 (2009) (quoting *Kasky v.
> Nike, Inc.*, 27 Cal.4th 939, 951, 119 Cal.Rptr.2d 296, 45 P.3d 243 (2002)).
> Accordingly, a plaintiff must allege: (1) statements in the advertising are untrue
> or misleading, and (2) defendant knew, or by the exercise of reasonable care
> should have known, that the statements were untrue or misleading. *People v.
> Lynam*, 253 Cal.App.2d 959, 965, 61 Cal.Rptr. 800 (1967).

*VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*, 673 F. Supp. 2d 1073, 1088 (E.D. Cal. 2009).

With these standards in mind, the Court understands Plaintiff to be generally alleging unfair treatment based off Defendant's failure to explain why it denied him travel and false advertising regarding its policy to not discriminate. However, for the reasons given below, the Court agrees that Plaintiff's allegations for why § 17200 and § 17500 were violated fail to state a claim for relief.

As for unlawful conduct, a defendant cannot be liable "without having violated another law" and Plaintiff's "complaint fails to plead sufficiently the violation of any law." *Lopez*, 2010 WL 2836823, at *6. Assuming, that Defendant failed to explain to Plaintiff why it denied him the opportunity to travel, Plaintiff has not identified a law that this failure violated. Likewise, as for unfair conduct, Plaintiff does not explain how it is deceptive for Defendant not to explain the basis on why it denied him travel, nor has he specified any other "deceptive conduct that caused [him] injury." *Id.* As for fraudulent conduct, Plaintiff has failed to "set forth what is false or misleading about a statement, and why it is false." *Id.* at 7. Similarly, Plaintiff has not identified "what advertisements and materials give rise to [his] false advertising claim." *Moss*, 197 F. Supp. 3d at 1200. Rather, he only refers generally to print and televisions ads where Defendant advertised "that it does not discriminate." (ECF No. 1-1, p. 7).

Defendant also argues that Plaintiff fails to state a claim because most of the events in

1   the complaint appear to have occurred outside California when Plaintiff was in Phoenix trying

2   to book another flight to Orlando and he does not allege that any advertisements were made or

3   disseminated in or from California. (ECF No. 5, p. 18). Discussing this area of law, the Ninth

4   Circuit has noted as follows:

5   > To evaluate whether a claim seeks to apply the force of a state statute beyond
6   > the state's boundaries, courts consider where the conduct that "creates liability"
    > under the statute occurs. *Sullivan v. Oracle Corp.*, 51 Cal.4th 1191, 127
7   > Cal.Rptr.3d 185, 254 P.3d 237, 248 (2011); *see also RJR Nabisco, Inc. v.*
    > *European Cmty.*, —— U.S. ——, 136 S.Ct. 2090, 2101, 195 L.Ed.2d 476 (2016)
8   > (where the "conduct relevant to the statute's focus occur[s]"). If the conduct that
    > "creates liability" occurs in California, California law properly governs that
9   > conduct. *Sullivan*, 127 Cal.Rptr.3d 185, 254 P.3d at 248; *see also Diamond*
    > *Multimedia Sys., Inc. v. Superior Court*, 19 Cal.4th 1036, 80 Cal.Rptr.2d 828,
10  > 968 P.2d 539, 554 (1999). By contrast, if the liability-creating conduct occurs
    > outside of California, California law generally should not govern that conduct
11  > (unless the Legislature explicitly indicates otherwise, which it did not in the
12  > Labor Code). *See Sullivan*, 127 Cal.Rptr.3d 185, 254 P.3d at 248.

13  *Oman v. Delta Air Lines*, Inc., 889 F.3d 1075, 1079 (9th Cir. 2018). As one court as noted in a

14  similar context, it is not enough that a Plaintiff may have purchased an airline ticket in

15  California if the underlying conduct occurred outside California. *See Sousanis v. Northwest*

16  *Airlines, Inc.*, No. C–99–2994, 2000 WL 34015861, at *7 (N.D. Cal. March 3, 2000) ("Simply

17  because plaintiff resides in California, purchased her ticket here, and her flight originated here

18  does not mean that the California statutes [including § 17200] she has sued under apply outside

19  the state. The Legislature did not contemplate these statutes reaching outside of the jurisdiction,

20  and they do not. Were it otherwise, airlines would be subject to a variety of statutes in many

21  different jurisdictions, even on the basis of one interstate flight."); *Wilson v. Frito-Lay N. Am.,*

22  *Inc.*, 961 F. Supp. 2d 1134, 1148 (N.D. Cal. 2013) (dismissing § 17200 and § 17500 claims

23  based on activity occurring outside of California).

24       For these reasons, Plaintiff fails to state a claim.

25                              **4.        Unjust enrichment claim**

26       Plaintiff's remaining claim is for unjust enrichment and based on Defendant allegedly

27  "overcharging and refusing to provide services to [him]" after it charged him for tickets he

28  could not use. (ECF No. 1-1, p. 6). Defendant argues that unjust enrichment is not a standalone

1  cause of action but rather a basis for obtaining restitution based on a quasi-contract theory.

2  (ECF No. 5, p. 20).

3        It is true that, "in California, there is not a standalone cause of action for 'unjust

4  enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783

5  F.3d 753, 762 (9th Cir. 2015) (citations omitted). However, as one California court has noted:

6       There are several potential bases for a cause of action seeking restitution. For
example, restitution may be awarded in lieu of breach of contract damages when
7       the parties had an express contract, but it was procured by fraud or is
unenforceable or ineffective for some reason. (See generally 3 Witkin, Cal.
8       Procedure (4th ed. 1996) Actions, §§ 148–150, pp. 218–220; 1 Witkin,
Summary of Cal. Law (9th ed. 1987) Contracts, §§ 112, 118, pp. 137–138, 142–
9       144.) Alternatively, restitution may be awarded where the defendant obtained a
benefit from the plaintiff by fraud, duress, conversion, or similar conduct. In
10      such cases, the plaintiff may choose not to sue in tort, but instead to seek
restitution on a quasi-contract theory (an election referred to at common law as
11      "waiving the tort and suing in assumpsit").

12

13  *McBride v. Boughton*, 123 Cal. App. 4th 379, 388, 20 Cal. Rptr. 3d 115, 121-22 (2004).

14  Here, Plaintiff has alleged a "stand-alone" cause of action for unjust enrichment, which is not

15  valid. And despite noting in *Ali I* that Plaintiff may be able to assert an invalid-express-contract

16  claim, quasi-contractual claim, or breach-of-contract claim if given an opportunity to amend his

17  complaint, he has not pursued any alternative legal claim. Accordingly, Plaintiff has failed to

18  state a claim.

19             **D.**      **Leave to Amend**

20        Under Federal Rule of Civil Procedure 15(a)(2), "the court should freely give leave [to

21  amend] when justice so requires." Defendant argues that leave to amend should be denied and

22  this case should be dismissed with prejudice because Plaintiff has filed a nearly identical

23  complaint as *Ali I* after being advised of the appropriate standards, thus demonstrating that

24  further leave to amend would be futile. (ECF No. 14). The Court agrees as, "[d]ismissal

25  without leave to amend is proper if it is clear that the complaint could not be saved by

26  amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). Here, despite

27  being given the applicable legal standards and instruction for purposes of filing an amended

28  complaint, Plaintiff has filed a nearly identical complaint as *Ali I* with the same deficiencies.

1   Thus, the Court concludes that further leave to amend would be futile. *See Mir v. Fosburg*, 646

2   F.2d 342, 347 (9th Cir. 1980) (noting "the rule that a district court has broad discretion to grant

3   or deny leave to amend, particularly where the court has already given a plaintiff one or more

4   opportunities to amend his complaint to allege federal claims.").

5   **IV.   CONCLUSION AND RECOMMENDATIONS**

6   Review of the complaint reveals that Plaintiff's name is "Hussein Ali" rather than "Ali

7   Hussein" as reflected on the docket. (ECF No. 1-1, p. 2). Accordingly, the Clerk of Court is

8   directed to change Plaintiff's name on the docket to "Hussein Ali."

9   For the reasons given above, IT IS RECOMMENDED as follows:

10   1.   Defendant's motion to dismiss (ECF No. 5) be granted.

11   2.   Plaintiff's complaint be dismissed without further leave to amend.

12   These Findings and Recommendations will be submitted to the United States District

13   Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within

14   twenty-one (21) days after being served with a copy of these Findings and Recommendations,

15   any party may file written objections with the Court and serve a copy on all parties. Such a

16   document should be captioned "Objections to Magistrate Judge's Findings and

17   Recommendations." Any reply to the objections shall be served and filed within fourteen (14)

18   days after service of the objections. The parties are advised that failure to file objections within

19   the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d

20   834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

21
IT IS SO ORDERED.
22

23   Dated:   **June 28, 2023**                          /s/ Erica P. Grosjean

24                                                            UNITED STATES MAGISTRATE JUDGE

25

26

27

28